IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**NORMAN V. WHITESIDE,**

      **Plaintiff,**

  v.                                           Case No. 2:05-CV-280
                                                        Magistrate Judge Norah McCann King

**JONDREA PARRISH,** *et al.***,**

      **Defendants.**

**OPINION AND ORDER**

        This is a civil rights action under 42 U.S.C. §1983 in which Norman V. Whiteside ("plaintiff"), an inmate in the custody of the Ohio Department of Rehabilitation and Correction ("ODRC"), alleges that he was retaliated against and was denied his right to access the court while incarcerated at the Madison Correctional Institution ("MaCI"). With the consent of the parties, *see* 28 U.S.C. §636(c), this matter is now before the Court on *Plaintiff's Motion for Leave to Supplement His Memorandum Opposing Defendants' Second Motion for Summary Judgment*, Doc. No. 130 ("*Plaintiff's Motion*"), and on *Defendants' Second Motion for Summary Judgment*, Doc. No. 116 ("*Defendants' Motion*"). For the reasons discussed *infra*, both motions are **GRANTED**.

**I.** *PLAINTIFF'S MOTION*

        Plaintiff asks that the Court consider additional documents when considering *Defendants' Motion*. Plaintiff proffers, first, an inter-office communication between M.D. Sheets and Jondrea Parrish. *Exhibit A*, attached to *Plaintiff's Motion*. Plaintiff also proffers defendants' supplemental response to plaintiff's first set of interrogatories and defendants' supplemental response to plaintiff's first set of requests for admission. *Exhibits B and C*,

attached to *Plaintiff's Motion*. The Court **GRANTS** *Plaintiff's Motion*, Doc. No. 130.

## II. DEFENDANTS' MOTION

### A. Background

Upon plaintiff's arrival at MaCI in 2001, he possessed "several bags of legal materials associated with his criminal conviction and other civil rights issues." *Verified Complaint,* ¶¶3, 6, Doc. No. 3. An ODRC regulation[1] requires that personal property stored in an inmate's cell fit within a 2.4 cubic foot container. Ohio Admin. Code §5120-9-33; *Declaration of Jondrea Parrish,* ¶5, *Exhibit G*, attached to *Notice,* Doc. No. 127; *see also Plaintiff's Deposition*, at p. 40, Doc. No. 115. Plaintiff alleges that his unit manager authorized plaintiff to store his materials in his cell. *Verified Complaint*, ¶ 6. Plaintiff was also permitted to store other legal files in the vault in his housing unit. *Id*., ¶10. In response to a request by plaintiff, the MaCI warden issued plaintiff two additional footlockers. *See Disposition of Grievance,* attached to *Verified Complaint*. Plaintiff possessed this legal material – apparently stored in his 2.4 foot personal storage container, two footlockers and his housing unit's vault – for more than one year. *Id.*

Prior to August 2002, plaintiff filed three lawsuits in the Ohio Court of Claims. *Id.* Plaintiff alleges that, thereafter, "MaCI staff launched a wave of retaliatory attacks against the plaintiff," took his property and ransacked his living quarters "for pure harassment." *Id*., ¶¶ 10, 11. Plaintiff specifically alleges that, over the next several months, defendant Jondrea

---

[1] Ohio Admin. Code §5120-9-33 provides that, with few exceptions, "an inmate may not possess more than 2.4 cubic feet of combined state and personal property unless specifically authorized pursuant to this rule; . . ." §5120-9-33(B). The regulation also provides that [w]ardens shall have the authority to establish institutional rules governing the storage of inmate legal materials and commissary items. §5120-9-33(H). Property in excess of the limitations established by the regulation "will be deemed contraband and disposed of . . . ." §5120-9-33(D).

Parrish, plaintiff's case manager ("Defendant Parrish"), refused to help him if he continued to file lawsuits, *Id.*, ¶ 12, and that the institutional inspector, defendant Virginia Workman ("Defendant Workman"), refused to appropriately address plaintiff's grievances. *Id.*, ¶ 13. In December 2002, Defendant Parrish was promoted to unit manager and allegedly "targeted" plaintiff for discriminatory treatment because of his membership in the NAACP. *Id.*, ¶¶ 14 - 15.

In April 2003, Defendant Parrish granted plaintiff's request to keep certain excess legal materials in his cubicle over the weekend, even though the materials did not fit into his property container. *Id.*, ¶ 16. *See also Plaintiff's Deposition*, p. 78. On April 21, 2003, an inspection of inmates' storage was conducted. *Id.*, ¶ 17. Plaintiff alleges that he initially passed the inspection even though he was in possession of excess materials. *Id*. However, according to plaintiff, Defendant Parrish ordered a second inspection of only plaintiff's cubicle and directed that plaintiff's materials be sent out of the prison. *Id*. On April 22, 2003, plaintiff reported to Defendant Workman that there were certain "discrepancies and improprieties in MaCI's fiscal accounting procedures." *Id.*, ¶ 18. As a result, plaintiff's cubicle was "shookdown and left in total disarray with his legal papers strewn everywhere." *Id.*, ¶ 19. Plaintiff's cubicle was again searched on April 24, 2003, and his legal papers were again thrown into disarray. *Id.*, ¶ 20. Plaintiff contends that it was Defendants Parrish and Workman who ordered the searches, based on a guard's comment to plaintiff: "That's what you get for filing all those papers." *Id*.

On April 28, 2003, plaintiff retrieved legal materials from the housing unit's vault. *Id.*, ¶ 22. A sergeant searched plaintiff's cubicle the next day, purportedly at Defendant Workman's direction. *Id.* Some of plaintiff's excess legal materials were confiscated. *Id.* On April 30, 2003, the same sergeant returned to plaintiff's cubicle and required that he choose the

excess material, whether legal or personal, to be removed. *Id*., ¶ 23.

As a result of the confiscation of his legal materials, plaintiff alleges, he could not present evidence at a June 2003 trial concerning his property, he expected to lose a case against the Ohio Parole Board and he lacked evidence and papers for a deposition in litigation against MaCI, resulting in the loss of that case and of another case dealing with medical malpractice. *Id.*, ¶24.

### B. Standards

*1. Summary Judgment*

The standard for summary judgment is well established. This standard is found in Rule 56 of the Federal Rules of Civil Procedure, which provides in pertinent part:

> The judgment sought shall be rendered if the pleadings, discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

F.R.Civ.P. 56(c)(2007). In making this determination, the court must view the evidence "in the light most favorable" to the non-moving party. *Adickes v. S.H.Kress & Co.*, 398 U.S. 144, 157 (1970). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). However, summary judgment is appropriate if the opposing party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "mere existence of a scintilla of evidence in support of the [opposing party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [opposing party]." *Anderson*, 477 U.S.

at 252.

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record that demonstrate "the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the non-moving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting former F.R.Civ. P. 56(e)). "Once the moving party has proved that no material facts exist, the non-moving party must do more than raise a metaphysical or conjectural doubt about issues requiring resolution at trial." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992)(citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

2. Retaliation

A plaintiff alleging retaliation bears the burden of proving three essential elements. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999); *see also Watkins v. Phillips*, 194 F.3d 1315, 1318 (6th Cir. 1999). In order to prevail on that claim, the plaintiff must establish that

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two – that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X,* 175 F.3d at 394. *See also Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998).[2]

---

[2] Plaintiff erroneously argues that this Court, in resolving defendants' *Motion for Judgment on the Pleadings*, determined that he had satisfied these elements. *Plaintiff's Memorandum in Opposition*, p. 1, Doc. No. 125. To the contrary, the Court merely emphasized that the standard for deciding a motion for judgment on the pleadings requires only that the well-pleaded facts be accepted as true. *Opinion and Order*, p. 10, Doc. No. 28 (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

An inmate has a constitutionally protected right to pursue litigation involving "direct appeals, habeas corpus applications, and civil rights claims." *Lewis v. Casey*, 518 U.S. 343, 355 (1996).  However, if an inmate has violated a legitimate prison regulation, he has not engaged in protected conduct.  *Thaddeus-X,* 175 F.3d at 395. Moreover, the second element of a retaliation claim requires, not a subjective response by the inmate plaintiff, but an adverse action, *i.e.*, an action that "is capable of deterring a person of ordinary firmness from exercising his or her right to access the courts."  *Id.* at 398.  The retaliatory confiscation of an inmate's legal papers can be such an adverse action. *Bell v. Johnson*, 308 F.3d 594, 605 (6th Cir. 2002).  If the inmate plaintiff can establish that his protected conduct was a motivating factor behind the adverse action, the defendant may nevertheless prevail on summary judgment if the defendant can establish that he or she would have taken the same action in the absence of the protected activity.  *Thaddeus-X,* 175 F.3d at 399 (citing *Mount Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977)).

**C. Application**

In *Defendants' Motion*, defendants take the position that plaintiff was not engaged in protected activity, that he was not deterred from his litigation efforts by any action of the defendants and that, in any event, defendants would have taken the same action regardless of any protected activity on plaintiff's part.[3]

In arguing that plaintiff did not engage in protected activity, defendants focus – incorrectly – on the litigation that, according to plaintiff, was negatively impacted by defendants' alleged misconduct.  The proper focus is on the litigation initiated by plaintiff prior to August

---

[3] Defendants also claim the protections of sovereign and qualified immunity.  Because the Court concludes that plaintiff has failed to establish a constitutional claim of retaliation, the Court need not address these defenses.

6

2002, *see Verified Complaint*, ¶10, which plaintiff alleges precipitated retaliation against him. Plaintiff refers in his *Verified Complaint* to three lawsuits initiated by him in the Ohio Court of Claims.  An exhibit submitted by defendants indicates that, prior to August 2002, plaintiff had filed four lawsuits in the Ohio Court of Claims: three lawsuits against the ODRC or the Orient Correctional Institution and one lawsuit against the Ohio Parole Board.  *Exhibit H*, attached to *Defendants' Motion*.  *See also Exhibits B, C, D, E*, attached to *Defendants' Motion*.  It is not entirely clear from the materials before the Court whether any of these lawsuits was of the sort referred to in *Lewis v. Casey*, 518 U.S. at 355, as protected by the United States Constitution. The Court need not resolve this issue, however, because plaintiff also alleges in his *Verified Complaint* that defendants' alleged retaliation was also precipitated by plaintiff's membership in the NAACP, *Id.*, ¶¶ 14 - 15, and complaints about "MaCI's fiscal accounting procedures."  *Id.*, ¶ 18.  The Court concludes that, as to the first element of a retaliation claim, *i.e.*, that plaintiff engaged in protected conduct, defendants have not established that summary judgment is warranted.

Defendants also contend that, because any action on the part of prison officials did not serve to impede plaintiff's litigation activities, plaintiff cannot establish the second element of a retaliation claim, *i.e.*, that plaintiff was subjected to an adverse action that would deter a person of ordinary firmness from continuing to engage in the protected activity.  *See Thaddeus-X*, 175 F.3d at 394.  In making this argument, defendants' attention is again incorrectly focused.  It is not the plaintiff's subjective response that the second element addresses; rather, this element of a retaliation claim addresses the character of the alleged adverse action and its likely impact on – not the actual plaintiff – but on "a person of ordinary

7

firmness." *Id*. Because the confiscation of legal papers can qualify as an adverse action sufficient to satisfy the second element of a retaliation claim, *see Bell v. Johnson*, 308 F.3d 594, this Court concludes that, as to the second element of a retaliation claim, defendants have not established that summary judgment is warranted.

Plaintiff attempts to establish a causal connection between his activities and defendants' alleged response by pointing to the temporal proximity between the two and to comments allegedly made by prison officials. In considering the element of causation, however, the Court must also consider whether there were non-retaliatory reasons for the defendants' actions. *See Thaddeus-X*, 175 F.3d at 399. If the defendants can establish that they would have taken the same action regardless of any protected activity on plaintiff's part, the plaintiff cannot prevail on his claim of retaliation. *See Mount Healthy*, 429 U.S. 274.

In support of *Defendants' Motion,* defendants take the position that the restriction on inmate property would have been enforced under any circumstances. *Declaration o f Jondrea Parrish*, ¶10, *Exhibit G*, attached to *Notice,* Doc. No. 127; *Affidavit of Virginia Workman*, ¶9, *Exhibit K*, attached to *Notice,* Doc. No. 127. Even plaintiff conceded in his deposition that "all inmates have to comply with [the regulation limiting inmate property]," *Plaintiff's Deposition*, p. 63, Doc. No. 115, and that "[l]awfully, everyone has to comply." *Id.*, p. 62.

Plaintiff points to evidence suggesting that the prison rules and regulations limiting inmate property may have been imperfectly enforced. *Plaintiff's Deposition*, p. 62.[4]

---

[4]Plaintiff refers to the *Declaration of Todd Delcol*, Exhibit, attached to *Plaintiff's Motion for Leave to Supplement Plaintiff's Memorandum contra Defendants' Motion for Judgment on the Pleadings*, Doc No. 24. This inmate states that Defendant Parrish permitted him to keep excess legal materials in his cubicle "except when there is a 2.4 pack-up." *Id.*, ¶3. Interestingly, Mr. Delcol's declaration would suggest that Defendant Parrish did not retaliate against all inmate litigation activities.

Indeed, it appears from his own *Verified Complaint* that plaintiff was, himself, a beneficiary of lapses in enforcement of the regulation.[5]  However, the record is clear that lawful restrictions on inmate property were generally enforced at MaCI during the relevant time period and that those restrictions were applicable to plaintiff regardless of his activities.  Under these circumstances, it cannot be said that, but for plaintiff's protected activities, his legal papers would not have been confiscated and his litigation activities would not have been disrupted.

The Court therefore concludes that defendants are entitled to summary judgment on plaintiff's claim of retaliation.

**WHEREUPON** *Plaintiff's Motion*, Doc. No. 130, is **GRANTED**; *Defendants' Motion*, Doc. No. 116, is **GRANTED**.  The Clerk is **DIRECTED** to enter final judgment in this action.

March 31, 2008                                           *s/Norah McCann King*
Date                                                     Norah McCann King
                                                           United States Magistrate Judge

---

[5]The Court rejects as unsupported and contrary to the language of the regulation plaintiff's contention, *Plaintiff's Memorandum in Opposition*, pp. 6 - 7, Doc. No. 125, that his possession of excess personal property did not violate the regulation because he was not issued a conduct report for any such violation.

9